IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOTIVA ENTERPRISES LLC,

*Plaintiff,*

-against-

SR INTERNATIONAL BUSINESS INSURANCE COMPANY PLC; LIBERTY MUTUAL INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY; AIG CASUALTY COMPANY; ACE AMERICAN INSURANCE COMPANY THROUGH STARR TECHNICAL RISKS AGENCY, INC.; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; ARCH INSURANCE COMPANY; LANCASHIRE INSURANCE COMPANY LIMITED; CATLIN, LLOYD'S SYNDICATE NO. 2003 SJC; O'FARRELL, LLOYD'S SYNDICATE NO. 1036 COF; NAVIGATORS SPECIAL RISKS, INC.; STELLAR INSURANCE, LTD; NOBLE ASSURANCE COMPANY; and CUNNINGHAM LINDSEY US, INC.

*Defendants.*

CIVIL ACTION FILE NO. 12-cv-01097-LPS

**MOTIVA ENTERPRISES LLC'S**
**MOTION TO REMAND**

Plaintiff, Motiva Enterprises LLC ("Motiva"), pursuant to 28 U.S.C. 1447, hereby moves the Court to remand this action to the Superior Court of the State of Delaware in and for New Castle County. The grounds for this motion are as follows:

## MOTION OUTLINE

SUMMARY ..... 2

ARGUMENT ..... 3

I. Removal was improper because the insurance policy giving rise to Motiva's claims contains a contractual waiver of removal. ..... 3

II. Removal was improper because this Court lacks jurisdiction under either of Swiss Re's theories ..... 7

A. Complete diversity does not exist because Cunningham Lindsey is properly a defendant due to fraud committed while adjusting the claims under Swiss Re's policy. ..... 7

1. Motiva's complaint specifically pleads who made each misstatement, what the misstatement was, and when and where the misstatement was made ..... 8

2. Motiva's First Amended Complaint seeks damages already suffered because of Cunningham Lindsey's misstatements. ..... 11

3. Whether the Superior Court has subject matter jurisdiction over claims for negligent misrepresentation is irrelevant to this Court's analysis of federal jurisdiction. ..... 13

B. Federal question jurisdiction does not exist because the arbitration provision in the policy does not apply to the claims in this case. ..... 14

## SUMMARY

Defendant SR International Business Insurance Company PLC ("Swiss Re") relied on two theories to remove this action from the Superior Court. First, Swiss Re incorrectly asserted that there is diversity jurisdiction, arguing that Motiva's claims against Swiss Re's adjustor (a party duly licensed to do business in Delaware) should be disregarded. Second, Swiss Re incorrectly asserted that there is federal question jurisdiction because of a contractual arbitration provision, even though that provision does not apply to the claims in this case. As a preliminary and dispositive matter, however, Swiss Re ignored entirely the existence of a contract provision that waived the right of Swiss Re (and all other insurer defendants) to remove this action.

## ARGUMENT

### I. Removal was improper because the insurance policy giving rise to Motiva's claims contains a contractual waiver of removal.

This Court need not even consider the validity of the theories advanced in Swiss Re's Notice of Removal, because the relevant insurance policy itself vests exclusive jurisdiction in the Delaware state court system. As recently confirmed by the Third Circuit, a defendant can contractually waive its right to removal. *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 547 (3d Cir. 2011). In that case, the provision in the agreement that "exclusive jurisdiction . . . shall lie in the appropriate courts of the State [of] New Jersey" was held to memorialize an intent to litigate all contractual disputes only in the state courts of New Jersey. *Id.* at 547, 550. The Third Circuit analyzed this clause using the widely-accepted rule that "of" denotes an intent to limit jurisdiction by sovereignty (*i.e.*, state-only), while "in" denotes an intent to limit jurisdiction by geography (*i.e.*, state or federal). *Id.* at 548-49. In this case, Swiss Re and the other insurer defendants (collectively, the "Defendant Insurers") agreed to essentially the same language providing exclusive "Jurisdiction of the State of Delaware, USA." *See* Policy MHOU07150, Schedule § 10 [attached as Exh. 1 to plaintiff's First Amended Complaint]. Accordingly, jurisdiction is proper only in the state courts of Delaware.

The Third Circuit agrees with a long line of cases holding that a contractual forum selection clause may waive a defendant's right to remove, and is sufficient to support a plaintiff's motion to remand. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-17 (3rd Cir. 1991). In keeping with the constrictive rather than expansive nature of the right of removal, and acknowledging the normal enforceability of contractual choice of forum clauses, the Court should employ the same benchmarks of construction and interpretation as it employs in resolving

all preliminary contractual questions, when determining contractual waiver of the right to remove. *Id.* at 1218.

The exercise of removal jurisdiction is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The party seeking removal bears the burden to establish federal jurisdiction. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Zoren v. Genesis Energy, LP.*, 195 F.Supp.2d 598, 602 (D. Del. 2002). This burden is particularly high when the removing defendant seeks to avoid a forum selection clause; under such circumstances, the federal court should give strong presumption in favor of enforcing a forum selection clause, and should decline to exercise its jurisdiction and remand unless the resisting party makes a "strong showing" either that: (1) the forum selected is so gravely difficult and inconvenient that it will for all practical purposes be deprived of its day in court; or (2) the forum selection clause was obtained through fraud or over-reaching. *Carlyle Investment Mgmt, LLC v. Carlyle Capital Corp. Ltd.*, 800 F.Supp.2d 639, 644-45 (D. Del. 2011). Swiss Re has not made, and cannot make, such a "strong showing" regarding the forum selection clause contained in the insurers' own Policy.

In the Policy they issued to Motiva, the Defendant Insurers agreed to submit to the exclusive jurisdiction of the Delaware state courts. The policy explicitly states: "In the event of a dispute between the Insured and Insurers this policy shall be subject to . . . Jurisdiction of the State of Delaware, USA." Policy MHOU07150, Schedule § 10. The parties to the policy further agreed that the state court has exclusive jurisdiction: "Each party agrees to submit, except where

the dispute relates to the amount to be paid under this Policy only,[1] to the exclusive jurisdiction of the court stated in the Schedule and to comply with all requirements to give such jurisdiction." Policy MHOU7150, General Conditions § 13. Thus, the Defendant Insurers waived their rights to remove to federal court, by their agreement to "submit . . . to the exclusive jurisdiction of the courts [of the] Jurisdiction of the State of Delaware." *See Merrill Lynch*, 640 F.3d at 548-49.

The phrase "jurisdiction of the State of Delaware" has a formal meaning under Third Circuit jurisprudence, denoting the state courts of Delaware, only, and not the federal courts. *Merrill Lynch*, 640 F.3d at 549. In *Merrill Lynch*, the Third Circuit recognized the widely-accepted[2] rule that in a forum selection clause, the terminology "of a state" connotes sovereignty which limits jurisdiction to the state courts of the named state, in contrast to the terminology "in a state," which expresses the parties' intent as a matter of geography and permits jurisdiction in both the state and federal courts of the named state. *Id.* The court referred approvingly to the Fifth Circuit's more "pithy" characterization of this rule: "Federal district courts may be in [a state], but they are not of [that state]." *Id.* (citing *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (per curiam)). Where, as here, the defendants agreed to exclusive jurisdiction in the

---

[1] As discussed further in Section II.B, *infra*, this limited exception does not apply here because Motiva does not seek "the amount to be paid under [the] Policy *only*" (emphasis added). This suit is for declaratory relief seeking interpretation of the Policy terms and Swiss Re's obligations of coverage, and it neither seeks to recover any amount under the Policy nor involves any disputed amount of damage or loss.

[2] The Third Circuit quoted the Fourth Circuit as considering the rule to be "widely accepted." *See FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010) (citing *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009); *Am. Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003); *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 7 (1st Cir. 1984)).

courts of the Jurisdiction "of" the State of Delaware, they have waived their right of removal to federal courts "in" Delaware, and plaintiffs are entitled to remand. *Id.* at 550.

The Third Circuit has recognized that a forum selection clause expressing "exclusive jurisdiction" in a specific state court is "fundamentally incompatible with the preservation of the right to remove" to federal court. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 289-90 (3rd Cir. 2010) (citing *Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 448-49 (5th Cir. 2009)[3]) (the words "exclusive jurisdiction" are sufficiently express, clear, and unambiguous to be a waiver of rights of removal to federal court under 9 U.S.C. § 205, as any other interpretation would read the word "exclusive" out of the contract and ignore the "well-understood" meaning of "exclusive"). This is wholly consistent with Delaware law (the law governing the Policy), under which a forum selection clause providing for "exclusive jurisdiction" in a particular court is enforced to require proceedings only in the specified court. *See Ashall Homes Ltd. v. ROK Entertainment Group Inc.*, 992 A.2d 1239, 1247 (Del. Ch. 2010) (In considering a contract providing that the agreement shall be governed and interpreted in accordance with English law and the parties submit to the exclusive jurisdiction of the English courts, "[i]t is hard to imagine a clearer indication that the English courts are to have exclusive jurisdiction over disputes arising from the agreement."); *see also Aveta Inc. v. Cavallieri*, 23 A.3d 157, 166, 182 (Del. Ch. 2010); *Aveta Inc. v. Olivieri*, 2008 WL 4147565, at *2 (Del. Super. July 28, 2008) (not designated for publication) (giving full effect to forum selection clause with "exclusive jurisdiction" wording).

---

[3] The *Ensco* court also rejected the argument that an arbitration provision, such as the one in the policy here, could affect a contractual waiver of removal. *Ensco*, 579 F.3d at 448-49.

In compliance with the "exclusive jurisdiction" to which the parties agreed in the Policy, Motiva originally brought this declaratory action in a Delaware state court—the Superior Court in and for New Castle County. By virtue of that same forum selection clause, Swiss Re and the other Defendant Insurers have waived their right to remove the suit to federal court, and this Court should remand the litigation to the Superior Court for further proceedings in that proper forum.

## II. Removal was improper because this Court lacks jurisdiction under either of Swiss Re's theories.

Alternatively, remand is proper because this Court lacks either diversity jurisdiction or federal question jurisdiction. Although Swiss Re asserts that both diversity jurisdiction and federal question jurisdiction exist, 1) Swiss Re disregards the presence of a non-diverse defendant, Cunningham Lindsey U.S. Inc. ("Cunningham Lindsey"),[4] and 2) Swiss Re disregards arbitration law precluding federal question jurisdiction and the inapplicability of the arbitration clause to this case.

### A. Complete diversity does not exist because Cunningham Lindsey is properly a defendant due to fraud committed while adjusting the claims under Swiss Re's policy.

Swiss Re asserts that this Court should disregard the non-diverse defendant, arguing that the fraud claims against Cunningham Lindsey are themselves fraudulent. A brief summary of the history of the case explains why Cunningham Lindsey was appropriately added to the suit. Motiva initially filed suit against Swiss Re and the other insurers seeking a declaratory judgment regarding coverage obligations under the Policy. At that time, Cunningham Lindsey was acting

---

[4] Swiss Re also does not meet its burden of showing that the Lloyd's Syndicates are diverse. However, it is Motiva's current belief that no name within either Lloyd's Syndicate is a resident of Texas or Delaware.

as the insurer's adjustor and represented and agreed that Motiva's repair procedures would not prejudice those coverage obligations. (*See* First Am. Compl. ¶¶ 31, 35, 46-50.) Because Motiva was not aware at that time that those representations were false, Cunningham Lindsey was not named as a co-defendant. Almost immediately after that suit was filed, Cunningham Lindsey indicated that the repair procedures it had previously agreed to were not acceptable or agreed to, and that Motiva's repair procedures could now be a basis for denial of coverage obligations. (*See id.* ¶ 51.) Motiva then promptly added Cunningham Lindsey to the suit because its misrepresentations negatively affected the coverage obligations that were the basis of the suit and caused Motiva to incur additional expenses by undoing repair procedures. Swiss Re disputes that Motiva has been harmed by those misrepresentations.

**1. Motiva's complaint specifically pleads who made each misstatement, what the misstatement was, and when and where the misstatement was made.**

As a preliminary matter, Swiss Re argues that Motiva's First Amended Complaint does not satisfy the particularity requirements of Superior Court Civil Rule 9(b). Notice of Removal ¶ 20. In particular, Swiss Re asserts that Motiva "only very generally alleged that Cunningham Lindsey made false representations" and "failed to describe with particularity required what the specific statement or omission actually was." *Id.* However, each of the several misrepresentations pleaded against Cunningham Lindsey details the supposedly lacking "time, place, contents or speaker":

| Who, when, where | What was misrepresented |
|---|---|
| Stuart Strohmeyer of Cunningham Lindsey.<br>July 5 and 6, 2012<br>Via e-mail and subsequent telephone conference | "Motiva explained in detail the operations to remove the pipe and other Damaged Property and obtained the agreement of the Adjustor [Cunningham Lindsey] and Defendant Insurers to the plan for removal, processing and disposal of pipe and Damage Property with retention of representative samples." (First Am. Compl. ¶ 46.) |
| John Nelson of Cunningham Lindsey<br>July 17, 2012<br>On site at Motiva's Port Arthur refinery | "Defendant Insurers and the Adjuster confirmed their agreement to Motiva's plan for removal, processing, and disposition of pipe and other Damaged Property." (Id. ¶ 47.) |
| Mr. Strohmeyer<br>August 3 and 5, 2012<br>Via e-mail | "(Motiva's) Mr. Sullivan continued to advise Mr. Strohmeyer and Mr. Urguhart of Motiva's progress, confirmed their agreement to Motiva's operations, and continued to request advices for any proposed plan by Defendant Insurers to independently retain and store additional pipe or Damaged Property off-site." (*Id.* ¶ 48.) |
| Mr. Strohmeyer<br>August 6, 2012<br>Via e-mail and telephone | "Mr. Sullivan sent an e-mail to Mr. Strohmeyer within two hours disputing that contention, reminding Mr. Strohmeyer of their prior agreement to Motiva's operation . . . . Mr. Sullivan also called Mr. Strohmeyer on August 6, 2012 and engaged him, along with Motiva refinery personnel, in a telephone discussion of Motiva's ongoing operation; Mr. Strohmeyer neither objected not complained about that operation." (*Id.* ¶ 49.) |
| Mr. Strohmeyer<br>August 7, 2012<br>Via telephone conference | "In that telephone conference, the Adjuster and Defendant Insurers purported to confirm their agreement with Motiva's plan for removal and disposition of pipe and other Damaged Property. At no time during the call did the Adjuster or any representative of the Insurers object to or express any concern about the operation." (*Id.* ¶ 49.) |
| Mr. Strohmeyer<br>August 15, 2012<br>Via e-mail | "Motiva referred to the prior email exchanges and meeting, confirmed that Motiva had been removing, processing and disposing of pipe under that arrangement as agreed with Insurers' representatives, and indicated Motiva's belief that Insurers' representative were satisfied with their on-site access and with Motiva's operation." (*Id.* ¶ 50.) |

Swiss Re's characterization of Motiva's pleadings is flatly contradicted by the text of the pleadings themselves. The purpose of Rule 9(b) is "fairness: to enable an opponent to be informed of charges so as to be able to prepare a defense to them." *Chesapeake & Potomac Tel. Co. of Maryland v. Chesapeake Utilities Corp.*, 436 A.2d 314, 338 (Del. 1981). "The 'circumstances' which must be stated with particularity under Rule 9(b) refer to 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. 1983), *aff'd sub nom., Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984) (quoting *Autrey v. Chemtrust Indus. Corp.*, 362 F.Supp. 1085, 1092, 1093 (D. Del. 1973); 5 Wright and Miller, Federal Practice and Procedure § 1297 at p. 403 (1969)).[5] Here, even if Motiva's claims lack pinpoint precision (such as time-stamps of e-mails and direct quotes), those claims are sufficiently detailed as to give Cunningham Lindsey adequate notice of the circumstances of the misconduct alleged against it. By illustration, the Third Circuit has held the following pleading to be sufficient to provide adequate notice under the Federal Rule 9(b):

> The complaint stated the understanding of the parties, Illinois National and Jet Aviation, at the time of drafting: "[d]uring the negotiations for each of the Policies, the parties understood and agreed that liability coverage available to Insured Owners for the use of non-owned aircraft was limited to non-owned aircraft operated by or used at the direction of Jet Aviation Business Jets, Inc."

---

[5] The analysis is the same under Federal Rule of Civil Procedure 9(b), which is materially identical to Superior Court Civil Rule 9(b). *See, e.g., Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F.Supp.2d 519, 530 (D. Del. 2012) (plaintiffs may satisfy Rule 9(b) "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud.... Plaintiffs also must allege who made [the] misrepresentation to whom and the general content of the misrepresentation.") (quoting *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)). In fact, since Delaware state court rules are modeled after the Federal Rules of Civil Procedure, Delaware state courts give authorities applying the Federal Rules "great persuasive weight" in the application of an analogous Delaware rule. *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 490 (Del. 2000).

> Further, it identified the specific drafting error that had been made. Specifically, the 2008 policy substituted "Jet Aviation Business Jets, Inc." with "Named Insured" without realizing that doing so could lead to the contract being read to provide coverage to Insured Owners for non-owned aircraft that were not operated by or used at the direction of Jet Aviation Business Jets, Inc.

*Ill. Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 233 (3d Cir. 2011) (internal citations omitted). If the above pleading is legally adequate to provide notice, Motiva's more specific pleadings here must be adequate. Thus, Motiva's claims against Cunningham Lindsey (and the absence of diversity jurisdiction) cannot be disregarded through Swiss Re's misapplication of Rule 9(b).

**2. Motiva's First Amended Complaint seeks damages already suffered because of Cunningham Lindsey's misstatements.**

Swiss Re advances another theory for disregarding Motiva's claims against Cunningham Lindsey, arguing that Motiva has no valid claim against Cunningham Lindsey because Motiva has suffered no harm to date from the misrepresentations. *See* Notice of Removal ¶¶ 13-17. To prevail on this theory, Swiss Re must meet the heavy burden of showing "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). "A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* Thus, if there is any possibility of Motiva recovering damages from Cunningham Lindsey, Cunningham Lindsey was properly joined.

Under Texas law, where the fraud occurred, damages can potentially be recovered from adjusters who act improperly, including when the adjuster contributes to coverage denial. *See,*

*e.g.*, *Benton v. Lexington Ins. Co.*, No. 4:12-CV-01546, 2012 WL 3780312, at *6 (S.D. Tex. Aug. 31, 2012) (remanding because "the plaintiff's assertions tend to suggest that Bickett, while acting as a 'person' engaged in the business of insurance, performed and/or contributed in some way to Lexington and/or York's investigation and/or decision relative to the plaintiff's claim."); *Nichols v. Allstate Texas Lloyd's*, No. 4:12-CV-01524, 2012 WL 3780308, at *5 (S.D. Tex. Aug. 31, 2012) (similar); *see also Galveston Bay Biodiesel, L.P. v. Ace Am. Ins. Co.*, 719 F.Supp.2d 736, 740 (S.D. Tex. 2010). Because Motiva's claims are specifically predicated on Cunningham Lindsey's improper actions as the Defendant Insurers' adjuster, including contributing to potential coverage denial, there is a reasonable basis in fact and colorable grounds supporting the claim.

Although Motiva did not specifically plead its general damages, it is not required to do so under either federal or state law. *See* FED. R. CIV. P. 9(g) (requiring specificity only for special damages); FED. R. CIV. P. 54(c) (allowing recovery of any relief to which a party is entitled even without a demand for that relief); *Estate of Alberta Rae v. Murphy*, C.A.05C-01-087 WCC, 2006 WL 1067277, at *4 (Del. Super. Mar. 13, 2006), *aff'd*, 956 A.2d 1266 (Del. 2008) ("Again, most of these damages are general damages and do not need to be plead[ed] with specificity."). Accordingly, Motiva properly pleaded that "Motiva has or will suffer pecuniary loss by justifiably relying on the false representations by the Adjuster and Defendant Insurers." (First Am. Compl. ¶ 53.) In particular, Motiva has incurred significant costs related to the recovery of pipe that had been removed under the fraudulently-agreed procedure. In order to mitigate its damages and because storage of 30,000 feet of pipe would be impractical and environmentally hazardous, Motiva had to arrange for disposal of the majority of the pipe. Because cracking had rendered the pipe unsuitable for use, it was sold as scrap to be reprocessed in China. In order to

recover the pipe to satisfy Cunningham Lindsey and the insurers, Motiva had to renegotiate the sale and suffered a substantial penalty doing so. Contrary to Swiss Re's assertion that Motiva has suffered no injury because coverage has not yet been denied, these damages are independent of coverage denial.

Although Swiss Re asserts that coverage has not been denied[6] and its associated damages are thus too speculative to consider, Swiss Re ignores the point of the request for declaratory judgment—to determine whether there is coverage. Before this case is over, all parties will know whether coverage exists, making the damage caused by Cunningham Lindsey subsequently determinable. Because damages are recoverable for the specific misrepresentations alleged against Cunningham Lindsey, Motiva did not improperly join Cunningham Lindsey as a defendant.

**3. Whether the Superior Court has subject matter jurisdiction over claims for negligent misrepresentation is irrelevant to this Court's analysis of federal jurisdiction.**

Swiss Re's argument that the Superior Court lacks subject matter jurisdiction over claims for negligent misrepresentation (*see* Notice of Removal ¶ 22) is misplaced. While the Delaware Court of Chancery has original jurisdiction over claims of "equitable fraud"—also known as negligent misrepresentation, *see, e.g.*, *Radius Servs., LLC v. Jack Corrozi Constr., Inc.*, 2009 WL 3273509, at *2 (Del. Super. Sept. 30, 2009)—whether the Superior Court ultimately retains jurisdiction over such a claim would turn on that Court's analysis of the substance of Motiva's allegations, not whether the claim is labeled as one for "negligent misrepresentation." *See Dept.*

---

[6] Contrary to Swiss Re's assertion, the insurers have already expressly indicated that they consider Motiva's repair process to possibly justify denial of coverage in their reservation of rights letter. *See* Exh. A.

*of Transp. v. Figg Bridge Engineers, Inc.*, 2011 WL 5593163, at *4 (Del. Super. Nov. 9, 2011). Therefore, the question of the Superior Court's jurisdiction over Motiva's claim against Cunningham Lindsey for negligent misrepresentation is one properly presented to that Court pursuant to a motion to dismiss under Rule 12(b)(1). In any event, regardless of whether the Superior Court has subject matter jurisdiction over Motiva's negligent misrepresentation claim, Swiss Re does not and cannot argue that the Superior Court lacks subject matter over Motiva's claim against Cunningham Lindsey for fraud, which is alleged concurrently in Court II of the First Amended Complaint. For this reason, since Motiva has more than adequately alleged a claim for fraud against Cunningham Lindsey, the sufficiency of its alternative claim for negligent misrepresentation is wholly irrelevant to determining whether diversity jurisdiction exists in this Court.

**B. Federal question jurisdiction does not exist because the arbitration provision in the policy does not apply to the claims in this case.**

Although Swiss Re also removed on the theory that federal question jurisdiction arose because of an arbitration provision in the insurance policy, Swiss Re's theory fails for two reasons. First, the Federal Arbitration Act does not create federal question jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983). Instead, the FAA requires "an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Because Swiss Re does not assert any independent basis for federal question jurisdiction (nor does one exist in this insurance policy governed by Delaware law), this Court lacks federal question jurisdiction.

Second, even if the FAA could be construed to convey federal question jurisdiction, the arbitration provision in the policy does not apply to the claims at issue here. *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) (holding that arbitration

clauses should be applied only to claims that bear on the duties and obligations under the agreement). "A party cannot be forced to arbitrate the merits of a dispute, however, in the absence of a clear expression of such intent in a valid agreement." *DMS Properties-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 391 (Del. 2000). The policy repeatedly states that the parties must resort to arbitration *only* when the dispute is limited to a determination of the amount due under the policy:

- "If the Dispute has not been resolved to the satisfaction of either party within 90 days of service of the notice initiating mediation, . . . then either party may refer the Dispute to arbitration, *in respect of quantum only*." Policy MHOU07150, General Conditions § 4 (emphasis added).

- "In case the Principal Insured and the Insurer(s) shall fail to agree *as to the amount to be paid* under this Policy through mediation as above, such dispute shall then be referred to arbitration under ARIAS Arbitration Rules." Policy MHOU07150, General Conditions § 4 (emphasis added).

- "For disputes *relating solely to the amount to be paid* under this Policy such disputes shall be governed by terms of the arbitration clause." Policy MHOU07150, General Conditions § 13 (emphasis added).

None of the claims at issue here concern the amount to be paid under the policy. Instead, the claims here concern only a request for a declaration that coverage exists and for non-contractual tort claims based on misrepresentations made during the adjustment process. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Brophy*, 371 Fed.Appx. 302, 305 (3d Cir. 2010) (recognizing that preliminary coverage questions fall outside limited arbitration clauses); *see also State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 717-20 (3d Cir. 2000). Those claims are ripe because Swiss Re and the other Defendant Insurers have indicated they will deny coverage, and because Motiva has been harmed as a result of defendants' misrepresentations. There has been

no determination of any amount to be paid, making an arbitral claim based on the quantum premature.[7] Thus, federal question jurisdiction is both legally and factually improper.

WHEREFORE, jurisdiction only being proper in a Delaware state court, Motiva asks that this Court remand this case to the Superior Court of Delaware in and for New Castle County.

WILKS LUKOFF & BRACEGIRDLE, LLC

Paul M. Lukoff (Del. Bar No. 96)
Thad J. Bracegirdle (Del. Bar No. 3691)
Suite 100
1300 Grant Avenue
Wilmington, DE 19806
302-225-0866
plukoff@wlblaw.com

*ATTORNEYS FOR PLAINTIFF, MOTIVA ENTERPRISES LLC*

Dated October 2, 2012

[7] If coverage is determined to exist, it is possible that a future dispute subject to arbitration could arise based on the amount to be paid.